IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MITEH RONNY FIRMINO DA SILVA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 1:26-cv-0072 (RDA/LRV) |
| KRISTI NOEM, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## ORDER

This matter comes before the Court on Petitioner Miteh Ronny Firmino Da Silva's ("Petitioner") Petition for Writ of Habeas Corpus (Dkt. 1) seeking release from Immigration and Customs Enforcement ("ICE") custody. Petitioner argues that he is being unlawfully detained despite living in the United States since 2017 and having a pending application for asylum. Respondents oppose the Petition. For the reasons set forth below, the Petition is DENIED.

## I. BACKGROUND

Petitioner is a native and citizen of Brazil. Dkt. 1 ¶ 11. On or about June 12, 2017, Petitioner was admitted to the United States on a nonimmigrant temporary visitor visa in Miami, Florida for a temporary period not to exceed December 11, 2017. *Id.*; Dkt. 10-1 ¶ 6. Petitioner was granted three extensions to his B2 nonimmigrant via, providing Petitioner with authorization to remain in the United States until June 11, 2020. Dkt. 10-1 ¶ 7.

Petitioner thereafter moved to Gaithersburg, Maryland, and developed a life there, where he has a U.S. citizen son. Dkt. 1 ¶ 12. On June 8, 2023, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal with U.S. Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 13; Dkt. 10-1 ¶ 8. In response to his application, he was issued a notice stating: "You may remain in the U.S. until your asylum application is decided." Dkt. 1 ¶ 13; Dkt. 1-1.

The notice further provided: "Having a pending asylum application with USCIS does not preclude U.S. Immigration and Customs Enforcement (ICE) or U.S. Customs and Border Protection (CBP) from placing you into removal proceedings." Dkt. 1-1. Petitioner remained in the United States while his application was pending. Dkt. 1 ¶ 14.

On January 7, 2026, Petitioner was arrested by ICE near Washington, D.C. Dkt. 1 ¶ 15; Dkt. 10-1 ¶ 9.[1] Petitioner was arrested without a warrant and asserts that he was racially profiled. Dkt. 1 ¶ 15.

On January 8, 2026, Petitioner was issued a Notice to Appear charging him with being deportable from the United States under 8 U.S.C. § 1227(a)(1)(C)(i), as an alien who, after admission as a nonimmigrant, failed to maintain or comply with the conditions of nonimmigrant status pursuant to which he was admitted. Dkt. 10-1 ¶ 10. That same day, an administrative warrant issued. Dkt. 10-2.

At the time that Petitioner filed the Petition, counsel for Petitioner had filed a bond motion with the Annandale Immigration Court, which remained pending in the queue. *Id.* ¶ 17.

Petitioner filed his Petition on January 9, 2026. Dkt. 1. In the Petition, Petitioner asserts three Counts: (i) a violation of 8 U.S.C. § 1226(a) based on unlawful detention without a warrant; (ii) a Fifth Amendment due process challenge based on Respondents' "detention of Petitioner without a warrant and without a pre-deprivation hearing, after having informed him that he may remain in the country during the pendency of his asylum application"; and (iii) a violation of the Administrative Procedures Act based on a policy of arresting individuals without a warrant and despite having told Petitioner that he may remain in the United States. Dkt. 1 at 5-7.

---

[1] Petitioner asserts that he was arrested on "January 7, 2025," but that appears to be a typographical error, and he was actually arrested in 2026.

On January 21, 2026, Petitioner appeared virtually with counsel in the Annandale Immigration Court for a bond hearing. Dkt. 10-1 ¶ 11. The Immigration Judge denied Petitioner's bond based on his inability to demonstrate that he is not a flight risk. *Id.* Petitioner's removal proceedings remain before the Annandale Immigration Court. *Id.* ¶ 12.

On February 9, 2026, Petitioner filed a Reply in support of his Petition. Dkt. 12. In the Reply, Petitioner dispute Respondents' arguments regarding the warrantless arrest. *Id.* at 2. Petitioner then raises a new argument for the first time in his Reply: "The Immigration Court System Does Not Comport with Due Process." *Id.* at 4. The remaining portion of the Reply, to which Respondents did not have an opportunity to respond, argues that the immigration system as executed by the current administration does not comport with due process. *Id.* at 4-15. Petitioner does not, however, address the particulars of his own bond hearing.

Now that this matter has been fully briefed and is ripe for disposition, the Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J).

## II.  LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

3

## III.  DISCUSSION

Each of Petitioner's three counts are addressed to essentially the same issues: first, whether Respondents can arrest Petitioner without a warrant and, second, whether Petitioner can be arrested at all where he has an asylum application pending.  The Court will address both arguments but begins with the second.

The arguments that Respondents were arbitrary and capricious or violated due process where they arrested and detained Petitioner after instructing him that he could remain in the United States are easily addressed.  Petitioner ignores the very next sentence of the notice on which he relies.  Respondents explicitly warned Petitioner that: "Having a pending asylum application with USCIS does not preclude U.S. Immigration and Customs Enforcement (ICE) or U.S. Customs and Border Protection (CBP) from placing you into removal proceedings."  Dkt. 1-1.  Petitioner, who is represented by counsel, cites no case authority supporting that an arrest after such a warning is arbitrary and capricious or unconstitutional.  It is Petitioner's burden to demonstrate an entitlement to relief and, here, where the entirety of the language in the notice is not addressed, Petitioner has not met his burden.  *See Roshniashvili v. Allen*, 2026 WL 446657, at *2 (S.D.W. Va. Feb. 17, 2026) ("The petitioner bears the burden of proving that he is being held contrary to law by a preponderance of the evidence.").

Turning to the first argument, whether Petitioner may be detained pursuant to a warrantless arrest, the Court notes that Respondents have raised a question regarding subject matter jurisdiction.  Dkt. 10.  Section 1252(b)(9) provides: "Judicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."  8 U.S.C. § 1252(b)(9).  Section 1252(g) deprives district courts of jurisdiction, including

habeas jurisdiction, to review "any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to (1) commence proceedings, (2) adjudicate cases, or (3) execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). Thus, to the extent that Petitioner challenges the initiation of removal proceedings during the pendency of his asylum application, this Court lacks subject matter jurisdiction to consider it under both jurisdiction-stripping provisions. *See Johnson v. Whitehead*, 647 F.3d 120, 124 (4th Cir. 2011) ("Congress has specifically prohibited the use of habeas corpus petitions as a way of obtaining review of questions arising in removal proceedings.").

Petitioner's challenge to his warrantless arrest does not fit neatly into either jurisdiction-stripping provision identified by Respondents. Although Respondents argue that this is merely challenging the decision to initiate removal proceedings, the Court does not view it that way; rather, Petitioner is challenging the means by which Respondents are authorized to detain Petitioner.[2] Thus, this Court determines that it has subject matter jurisdiction to the extent the challenge is limited to the warrantless nature of the arrest. In this regard, Respondents correctly make two arguments: (i) habeas is aimed at correcting a current deficiency with respect to detention; and (ii) the INA provides for warrantless arrests. As the Supreme Court has recognized, "the great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention." *Walker v. Wainwright*, 390 U.S. 335, 337 (1968). Thus, it has long been the rule that where a criminal defendant challenges his pretrial detention and is subsequently convicted, the

---

[2] Some courts have noted a petitioner's attack on a warrantless arrest "might implicate § 1252(b)(9) to the extent that it challenges the decision to detain him in the first place." *Loredo v. Forestal*, 2025 WL 3187319 at *2 n.3 (N.D. Ill. Nov. 14, 2025). This Court has already acknowledged that it lacks jurisdiction to the extent that Petitioner challenges the decision to detain him in the first place but does not find that the challenge to the warrantless arrest is limited to that issue.

habeas petition is mooted. *See, e.g., Congo v. Cnty. of Phila.*, 2019 WL 2635696, at *6 (E.D. Pa. May 6, 2019) (citing cases and finding that a petitioner "does not retain standing to challenge that pretrial incarceration" following his conviction). Similarly, in the immigration context, courts have held that habeas proceedings are moot where the basis for detention changes while the habeas case is underway. *See, e.g., De La Teja v. United States*, 321 F.3d 1357, 1363 (11th Cir. 2003) (finding case moot because petitioner was detained pursuant to § 1231 rather than § 1226). Here, Petitioner is currently detained pursuant to a warrant (Dkt. 10-2); thus, Petitioner cannot seek his immediate release based on the warrantless nature of his original arrest.

In any event, courts have also recognized that, pursuant to 8 U.S.C. § 1357, Respondents may arrest an immigrant and subsequently seek a warrant. *See Fernando C.C. v. Bondi*, 2026 WL 446408, at *2 (D. Minn. Feb. 17, 2026) (recognizing that the "Alice in Wonderland-like trail of immigration laws, therefore, authorizes immigration officers to arrest a noncitizen without a warrant, and determine within 48 hours to issue a warrant of arrest under 8 C.F.R. § 236.1"). This Court need not decide whether a petitioner could be held under Section 1226(a) without a warrant ever issuing because here a warrant issued following arrest. As the Supreme Court has recognized, "if sufficient ground for [a petitioner's] detention by the government is shown, he is not be discharged for defects in the original arrest or commitment." *Ekiu v. United States*, 142 U.S. 651, 662 (1892); *cf. United States v. Crews*, 445 U.S. 463, 474 (1980) ("An illegal arrest, without more, has never been viewed as a bar to a subsequent prosecution, nor as a defense to a valid conviction."). The Supreme Court has further agreed that "[t]he mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984). That is, "an unlawful warrantless arrest isn't a get-out-of-jail free card if a lawful basis to detain someone is subsequently established." *Salazar v. Noem*, 2026 WL 458304, at *4 (D. Neb.

Feb. 18, 2026); *Trega v. Bondi*, 2026 WL 127617, at \*5 (D. Me. Jan. 16, 2026) (However, even if Ms. Trega could demonstrate her courthouse arrest violated the law, her remedy would not be in a petition for a writ of habeas corpus. Illegal arrest cannot serve as a basis for habeas relief.").[3] District judges in this Circuit have reached as similar conclusion. *See Chavez de Vasquez v. Baker*, 2025 WL 3713773, at \*2 (D. Md. Dec. 23, 2025) ("Here, with Petitioner's bond determination already made in immigration court and her removal proceedings underway, habeas review challenging her original arrest is not cognizable."). Thus, Petitioner has not established an entitlement to relief based on his warrantless arrest, and his Petition will be denied.

*    *    *

In Reply, Petitioner also challenges his bond hearing. This is not properly before this Court because it was not raised in the Petition and, indeed, the bond hearing did not take place until after the Petition was filed. Dkt. 1; Dkt. 10-1 ¶ 11. The Court recognizes that it does not have jurisdiction to review the substantive merits of the Immigration Judge's bond determination, *see* 8 U.S.C. §§ 1225(b)(2); 1226(e); however, the Court has the authority to review whether the factors the Immigration Judge considered in his bond determinations are constitutionally compliant, *Mejia*

---

[3] Petitioner cites one case from the Eastern District of California and two cases from the District of Maine for the proposition that a warrantless arrest can be a basis to release a Petitioner on habeas review. Dkt. 12 at 3-4 (citing *J.A.C.P. v. Wofford*, 2025 WL 30133328, at \*8 (E.D. Cal. Oct. 27, 2025); *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025); *Chiliquinga Yumbillo v. Stamper*, 2025 WL 2783642, at \*5 (D. Me. Sept. 30, 2025)). It is not clear from any of those cases that the Government – like Respondents here – obtained a warrant *after* the initial arrest. The *JACP* and *Chiliquinga* decisions both rest on the *Chogllo Chafla* decision, and the driving principle of that decision was the recognition that persons detained under Section 1226 must be detained *"on a warrant issued by the Attorney General."* 804 F. Supp. 3d at 264 (emphasis in original). In that case, it is not clear that a warrant was ever issued because the Government maintained that the petitioner at issue there was detained pursuant to Section 1225. Here, by contrast, a warrant *did* issue and, thus, Petitioner is currently being detained *"on a warrant issued by the Attorney General."* *Id.*; Dkt. 10-2. Thus, the Court is not persuaded by those out-of-Circuit cases.

*Orozco v. Lyons, et al.*, No. 1:25-cv-1762-AJT-WEF, Dkt. 20 at 7 (E.D. Va.) (ordering the federal respondents to either release the petitioner or to conduct an individualized bond hearing consistent with the Order). Because this issue is not properly before the Court at this time, the Court will not make any ruling in this regard. Rather, if Petitioner seeks to challenge his bond hearing, he must file an amended Petition raising such issue.

## IV.  CONCLUSION

Accordingly, for all of the reasons above, it is hereby ORDERED that the Petition (Dkt. 1) is DENIED; and it is

FURTHER ORDERED that the Court will DEFER lifting the Court's Order prohibiting Respondents from removing Petitioner from this District for SEVEN (7) DAYS to permit Petitioner to raise the issues argued on Reply in an Amended Petition. If Petitioner fails to amend his Petition to properly assert such claims, then Respondents are directed to notify the Court and the Court will promptly lift the restriction.

The Clerk is directed to send copies of this Order to all counsel of record.

It is SO ORDERED.

Alexandria, Virginia
February **25**___, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

8